**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:11CV-00011-ERG**

**JUNE E. BROWND**                                                                                                       **PLAINTIFF**

**VS.**

**WAL-MART STORES EAST,**
**LIMITED PARTNERSHIP**                                                                                      **DEFENDANT**

**MEMORANDUM OPINION**

Before the Court is a motion for summary judgment (DN 15) by Defendant, Wal-Mart Stores East, Limited Partnership. Plaintiff, June Brownd (Mrs. Brownd) has filed a response objecting (DN 18), and Wal-Mart has filed a reply (DN 19) to this response. The motion is ripe for determination.

STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The inquiry under Rule 56 is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The plain language of Rule 56 "mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial..." Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322-323. Once the moving party satisfies this burden, the burden shifts to the non-moving party to demonstrate there is a genuine issue of fact for trial. Anderson, 477 U.S. at 247-248. Although the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to support an assertion that there is a genuine issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials..." Fed.R.Civ.P. 56(c)(1)(A); see also Celotex, 477 U.S. at 324 (acknowledging that an earlier version of Rule 56 requires the non-moving party to show there is a genuine issue for trial through the use of affidavits, depositions, answers to interrogatories, and admissions on file). The substantive law governing the case will determine what issues of fact are material. Street, 886 F.2d at 1479-1480. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, the motion for summary judgment should be granted." Pitts v. Michael Miller Car Rental, 942 F.2d 1067, 1069-1070 (6th Cir. 1991) (citing Matsushita Elec. Ind. Co., 475 U.S. at 586).

Kentucky law is applicable to this case pursuant to Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However this court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in

Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476 (Ky. 1991)." Gafford v. Gen. Elec. Co., 997 F.2d 150, 165 (6th Cir. 1993).

STATEMENT OF FACTS

Mrs. Brownd filed this action seeking damages for a knee injury suffered by her in a fall which occurred in the parking lot of a Wal-Mart store in Madisonville, Kentucky on November 21, 2009. She alleges she was a business invitee and that Wal-Mart negligently maintained the parking lot causing her fall and resulting injury to her knee.

The day this happened Mrs. Brownd was in the company of her husband and eight year old grandson. Her fall apparently occurred during daylight hours. They had parked their vehicle in a space within the parking lot and were walking through the lot toward the entrance to the store. Mrs. Brownd's husband was walking slightly ahead of Mrs. Brownd. She trailed slightly behind and was holding her grandson's hand in her left hand. Mr. Brownd did not witness the fall itself, only the aftermath.

The only evidence in the record concerning the cause of the fall was offered by Mrs. Brownd during the taking of her discovery deposition. A key piece of the evidence is a photograph of the scene where the fall occurred and is attached to her deposition as Exhibit 1. During the deposition she was queried about the cause of the fall and marked this photograph describing her path of travel and the fall. The photograph shows a landscaping island surrounded by a concrete curb and gutter/apron.

Her testimony (J.B. Dep. p. 16) and her marks on the photograph indicate she and her grandson approached the edge of the island from the left. Her path demonstrates she stepped up on

the curb and proceeded to walk down the curb a short distance where she fell onto the parking lot, landing where she has placed an "X". Her last memory before the fall was that she was walking on top of the curb when she fell onto the parking lot. (J.B. Dep. p. 54, line 19-23). At the time she was holding her grandson's hand with her left hand and he was walking in the island mulch to her left.

Mrs. Brownd was provided ample opportunity during the course of her deposition to explain *the cause of her fall.* **Under questioning by Wal-Mart counsel, she testified:**

> Q  What caused you to go down?
> A  I'm not sure.
> Q  Did you trip on something?
> A  I'm not sure.
> Q  You don't know why you fell?
> A  I'm not sure why I fell.
> Q  How old was your grandson at the time?
> A  At the time, he was eight.
> Q  And you're not able to testify that you tripped on anything. Is that correct?  Your testimony is that you can't say that you tripped on anything?
> A  I'm not sure.
> Q  And you're not able to tell us why you ended up falling. Is that correct? You're not able to tell us why you ended up falling. Is that correct?
> A  I'm not sure.
> Q  Well, what do you mean you're not sure? Either you can or you can't.  Either you can tell us how you fell and what you fell on or you can't.  Please answer the question.
> A  I'm not sure. I'm answering the question.
> Q  That's not an answer. "I'm not sure" is not an answer.
> A  I'm not sure.
> Q  You're not sure of what?
> A  I'm not sure what caused me to fall.

(June Brownd deposition, p. 18-19)

**Further on in her deposition, she stated:**

> Q  And the last thing you knew you were walking on the curb, and the next thing you knew you banged your knee. Is that correct?
> A  Yes.
> Q  And you can't tell us how you got from walking on the curb to banging your knee and breaking your patella? You just don't know; is that correct?
> A  It happened so fast.

4

    Q  Is that correct?
    A  It happened so fast.
    Q  Ma'am, answer my question.
    A  Yes.

(June Brownd deposition, p. 23)

**She also testified:**

    Q  The photograph shows that there is some sort of break in the curb and also a break in what I'll call the gutter, the other concrete that's in the picture.  Did you see that break in the curb, that break in the concrete in the gutter before you fell?
    A  No.
    Q  And you were walking on the curb at the time that you tripped or fell?
    A  Yes.
    Q  Correct?
    A  Yes.

(June Brownd deposition, p. 40)

**She was also questioned regarding the medical history she imparted to treating medical providers concerning the cause of her fall:**

    Q  Did you ever describe to Dr. Moore or to the emergency room people what caused you to fall, to your recollection?
    A  Not to my recollection.
    Q  Because you really don't know what caused you to fall, right?
    A  Right.
    Q  You didn't know that day.  You don't know today?
    A  No.
    Q  The answer is yes, isn't it?  You didn't know that day and –
    A  I don't know that day, and I don't know today.

(June Brownd deposition, pp. 42-43)

**Finally, upon questioning by her own attorney, she alludes to a possible cause of her fall:**

    Q  Okay.  And why did you decide to walk up on the curb?
    A  To stay out of the traffic with him.
    Q  Did you trip off the curb, or did you land on something that was uneven, or what caused you to go down?
    MR. SULLIVAN:  I'm going to object to the form of the question.  Go ahead.  I think you're

kind of leading her.
 Q What happened?
 A I think I fell for some reason in that little hole that's there and hurt my knee.
 Q And what makes you think that? Is there anything that you can think of that would make you think that?
 A The unlevel part of that, probably part of that. I'm not sure, but that's what I'm thinking, the unevenness of the curb.

(June Brownd deposition, p. 50)

**With Wal-Mart's counsel renewing his questioning, he asks Mrs. Brownd to mark on Exhibit 1 to her deposition (the photograph) a circle indicating "that little hole" she described while under questioning by her own attorney. On the photograph she has drawn a circle around a small area where the gutter joins the asphalt parking lot, and has drawn a line with an arrow into the circle and has written the word "whole" on the line. He then resumes questioning:**

 Q So on Exhibit A [referring to Exhibit 1] there's an arrow pointing to the little hole that is there that you think might have been where you fell. That's correct, isn't it?
 A Yes.
 Q If that's the case, then you were walking on the curb as shown in the diagram and you stepped off the curb headed toward the asphalt. Is that correct? Is that what you are saying?
 A Yes.
 Q But you don't remember stepping off the curb, do you?
 A No.
 Q You do not remember taking a step from the curb to either the lower part of the concrete or the asphalt? You don't remember that, do you? Last thing you remember you were on the curb?
 A (WITNESS POINTS TO PHOTOGRAPH.)
 MR. KEOWN: you're pointing to the parking lot.
 Q. Now, that's where you landed.
 A Yes.
 Q The last thing you remember before striking your knee was that you were walking on the curb?
 A Yes.
 Q On top of the curb?
 A Yes.
 Q And the next thing you remember is banging your knee on the asphalt?
 A Yes.

(June Brownd deposition, pp. 53-55)

**When asked if she was distracted by anything, she testified:**

Q   Was your attention drawn to anything except where you were walking at the time you fell?  Was your attention on anything else besides where you were traveling, where you were walking at the time that you fell?
A   Yes.
Q   What?
A   Taking care of Parker [her grandson].
Q   Were you looking at Parker?
A   No.  I was just holding his hand.
Q   I understand you were holding his hand.  Did your attention to Parker require any more than to appreciate the fact that you had him by the hand?
A   No.

(June Brownd deposition p. 39)

**Further on the subject of whether she was distracted by her grandson, she testified:**

Q   Were you having any problem with holding Tyler (sic) back from catching up with his grandfather?
A   No.
Q   Was Tyler (sic) giving you any tugging or pulling about your holding his hand at that time?
A   No.

(June Brownd deposition p. 36)


CONCLUSIONS OF LAW

In the context of addressing a premises liability case, the Kentucky Court of Appeals recently made the following observations about Kentucky law:

> Generally, premises liability is a sub-category of negligence law, and in order to state a cause of action for negligence, "a plaintiff must establish a duty on the defendant, a breach of the duty, **and a causal connection between the breach of the duty and an injury suffered by the plaintiff.**"  ...  For purposes of this, the nature and scope of this duty is supplied by premises liability law: '[T]he owner of a premises to which the public is invited has a general duty to exercise

> ordinary care to keep the premises in a reasonably safe condition and warn invitees of dangers that are latent, unknown or not obvious." ...

*Lucas v. Gateway Community Services Organization, Inc.*, 343 S.W.3d 341 at 343-344 (Ky.App. 2011) (quoting *Lewis v. B & R Corp.*, 56 S.W.3d 432 at 436-437, 438 (Ky.App. 2001) (bold emphasis added). *Lucas* then describes three distinct historical categories of premises liability law, the first being natural outdoor hazards, such as snow and ice; the second being a foreign substance or other dangerous condition on the premises; and the third, hazards caused by the owner. 343 S.W.3d at 344.

The law in Kentucky has been if the hazard is known or obvious to the invitee then the owner has no duty to warn or protect the invitee against it. *Id.* However, the Supreme Court of Kentucky very recently modified the open and obvious doctrine. In *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010) it adopted the modern trend as expressed in the Restatement (Second) of Torts, section 343A(1) (1965). The Supreme Court of Kentucky explained the position of the Restatement (Second) of Torts regarding open and obvious conditions is as follows:

> "A possessor of land is not liable to his invitees for physical harm *caused* to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

319 S.W.3d at 389 (quoting Restatement (Second) of Torts, section 343A(1) (1965)).

As a result of this very recent modification the open and obvious doctrine "is more compatible with comparative fault than contributory negligence." *Lucas*, 343 S.W.3d at 344. Thus, the question of whether the doctrine applies is now one of fact related to fault. *Id.* (citing *McIntosh*, 319 S.W.3d at 389).

In *McIntosh*, the Supreme Court declared the issue is one of foreseeability, i.e., whether the

possessor of the premises could reasonably foresee that the dangerous condition would cause physical harm to the invitee notwithstanding its known or obvious danger. 319 S.W.3d at 389-390. The plaintiff was a paramedic who tripped and fell over a curb located between the ambulance dock and emergency room doors as she was helping transport a patient. *Id.* at 393-395. The Court observed that the curb was an open and obvious condition of the premises, traveled over many times by the plaintiff in the past as she helped transport other patients. *Id.* However, given the obvious distraction of focusing on a critically ill patient while rushing to enter the emergency room in the hospital, her memory lapse regarding the presence of the curb was an occurrence foreseeable by the Medical Center which may be required to take reasonable steps to prevent the harm. *Id.* at 394-395.

The Plaintiff in the case *sub judice* urges this Court to apply the holding in *McIntosh* to deny Wal-Mart's motion for summary judgment. But the Plaintiff has neglected to establish one critical aspect of her case. She has not proved what caused her fall.

In arguing the cause of her fall in her response to Wal-Mart's motion, Mrs. Brownd urges the Court to find testimony within her deposition that she fell because she encountered an unevenness in the curb and guttering. The Court has examined her testimony and finds no such declaration.

Mrs. Brownd's testimony is the only evidence in the record regarding what caused her to fall. Viewing the evidence of causation in a light most favorable to her, the most that can be said is that there is a mere *possibility* her fall was caused by some defective condition on the Wal-Mart premises, either the unevenness of the curb or a small hole in the parking lot. But the evidence of causation comes only from her own testimony which is at best mere speculation. At best she "thinks" her fall may have been caused by "that little hole" or the "unevenness" of the curb, but she

reiterates, "I'm not sure." (June Brownd deposition p. 50). The same evidence presented to a jury would only allow its members in deliberation to speculate as to the cause of Mrs. Brownd's fall. At best a finder of fact could only do what Mrs. Brownd has done - speculate as to the cause of her fall.

The traffic island and the curbing around it was an open and obvious condition and she intentionally engaged this structure, choosing to walk along the top of the curb in order to stay out of traffic. She needed no bright yellow paint on the surface of the curb informing her of its presence. While there "may" have been defective conditions in her path requiring Wal-Mart to warn of such conditions or repair them, she is unable to say that these conditions were the cause of her fall. As she answered in her deposition, she did not know what caused her to fall on the day it happened, nor did she know on the day she testified at her deposition (June Brownd deposition, pp. 42-43).

Any argument that she "may" have simply made a misstep and fallen from the top of the curb as a consequence of being distracted by the traffic and tending to the safety of her grandson does not comport with her sworn testimony. While she does state she was distracted by caring for her grandson, when questioned about the level of distraction she indicated she was merely aware that she was holding his hand at the time she fell. More importantly, she does not testify that she made such a missstep.

Mrs. Brownd intentionally stepped up on the curb to stay out of traffic. She was aware she was walking on the curb and once she landed on the parking lot, she was aware she fell. She is not able to explain why. What happened to Mrs. Brownd was not an event that was reasonably foreseeable by Wal-Mart. The curb from which she fell was itself not a dangerous condition - it was purposely installed where she encountered it. To require Wal-Mart to refrain from installing curbs and gutters or to warn an invitee not to intentionally walk on top of the curbing is an unreasonable

and unwarranted expectation.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the motion for summary judgment (DN 15) by Defendant, Wal-Mart Stores East, Limited Partnership.

Copies:     Counsel of Record
            Kelly Lovell, Courtroom Clerk